[Crim. No. 3857. Third Dist. Apr. 26, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LOWELL CARSON GILLS, Defendant and Appellant.

Lowell Carson Gills, in pro. per., and Lionel K. Hvolboll, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edward A. Hinz, Jr., and Theodore T. N. Slocum, Deputy Attorneys General, for Plaintiff and Respondent.

GOOD, J. pro tem.*—Defendant appeals from his conviction of grand theft after a jury trial and from the order denying his motion for new trial. In addition to theft, the information charged a count of burglary upon which the defendant was acquitted. It also charged three prior felonies (forgeries and auto theft) occurring between 1935 and 1953 which were admitted upon arraignment.

For about eight years defendant had been seasonally employed from about March until October or November at Terhel Farms, a large farming operation in Colusa County. On October 31, 1954, nine saddles, valued at not less than $100 each, and other riding gear disappeared from the tack room in the horse barn. On November 18 a dealer in horses and saddles named Swisher drove one Dick Lockett from Ontario, Oregon, to the latter's room in the Gayway Motel in Idaho, a few miles across the states' border. En route Lockett said he had a couple of saddles he was interested in selling. Defendant Gills was in the motel room upon their arrival. Lockett took two saddles from the closet and displayed them to Swisher. There was evidence that they were Terhel Farms' saddles worth about $180 and $250, respectively. Identifying details had

---

*Assigned by the Chairman of the Judicial Council.

been removed from them. Lockett offered to sell the less valuable saddle for $75. Swisher made a counter offer of $50. Swisher testified that Lockett asked Gills if they should take that price and Gills replied, ''Well, we are losing money on it.''

Defendant's employment was terminated on October 28, but the farm superintendent asked him to stay at the bunkhouse because there would be additional work if the weather cleared. He was paid off on the morning of the 30th. He owned a 4-door Dodge sedan. No one saw him on the premises during the afternoon or evening, and it is not known when he left. He was the only ranch hand whose employment was terminated between October 28 and November 1.

Two ranch hands testified they had seen Lockett at the farm on two occasions that season. The first witness saw him sometime in May when Lockett asked if Gills worked there. In late September or early October this witness observed Lockett talking to Gills at the ranch. The other witness saw Lockett only once, sometime in May. Both witnesses identified Lockett from photographs.

Defendant was apprehended in Davis by a Colusa County deputy sheriff. At the outset, defendant was adequately informed of his rights to counsel and to maintain silence. Gills denied knowledge of any saddles taken from the Terhel Farms. There was a running conversation thereafter during the time defendant was taken from the police station to his hotel room to collect his effects and en route to jail at Colusa. The deputy testified that he told defendant of his information of sales made by defendant and Lockett near Ontario, Oregon. Gills said he knew nothing about any saddles and had never sold any saddles in his life. The deputy asked him the whereabouts of other saddles that had been sold north of Vale, Oregon, and Gills replied, ''There are no more saddles north of Vale.'' (Vale and Ontario are farming communities in southeastern Oregon, about 20 miles distant from each other.) Gills also said he did not want to get Lockett involved and when the deputy informed him that Lockett was already involved Gills volunteered that he knew he was going back to ''the joint.''

Defendant did not testify at the trial. A motion for new trial was denied and judgment pronounced but a few weeks before *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106], proscribed both comment by the prosecution on an accused's failure to testify and instructions by the court that adverse inferences could be drawn therefrom. The district

attorney argued these matters and the offending instruction was given in accordance with pre-*Griffin* practices. Defendant also contends that *Griffin* proscribes arguments predicated upon his failure to show that his possession of recently stolen property was innocently acquired. The possession in question is that inferable from defendant's presence at and participation in the sale of one of the two stolen saddles at the motel in Idaho.

■ A failure to supply an honest explanation for the possession of recently stolen property can arise from false and evasive denials and explanations as well as from silence. In the case at hand we need not resolve the question of the impact of *Griffin, supra,* and *People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal. Rptr. 788, 408 P.2d 116], upon cases wherein such failure is predicated only upon silence in the face of accusation. Defendant did not remain silent. As we have noted, after the deputy sheriff had informed him of his involvement with Lockett in sales of stolen saddles at Ontario (Gayway Motel being suburban thereto) as well as at Vale, Oregon, he denied all knowledge and said he had never sold a saddle in his life.

■ Although he said he did not want to involve Lockett, silence in order to protect another person may not be justified by resort to the Fifth Amendment. (*Rogers* v. *United States,* 340 U.S. 367 [71 S.Ct. 438, 95 L.Ed. 344, 19 A.L.R.2d 378].) By the same token, although it may affect the weight of permissible inferences, an alleged desire to protect a third person does not invalidate the inferences that may be drawn from a false or evasive denial made by the possessor of recently stolen property. ■ Under *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449], the evidentiary factors in question were admissible and comment by the prosecution was proper.

Defendant concedes that the record herein is sufficient to raise a suspicion of guilt but argues that the possession of recently stolen property is not sufficiently corroborated to sustain the conviction. ■ It is well settled in larceny cases that in addition to such possession there must be substantial evidence establishing other inculpatory circumstances connecting a defendant with the commission of the offense charged. (*People* v. *Graziano,* 83 Cal.App.2d 701 [189 P.2d 518]; *People* v. *Alkow,* 97 Cal.App.2d 797 [218 P.2d 607].) However, the corroborating or connective effect of such additional evidence need only be slight. (*People* v. *McFarland, supra.*) Various factors of additional evidence held to be sufficient are

enumerated in *McFarland, supra,* and *People* v. *Phelps,* 192 Cal.App.2d 12, at page 15 [13 Cal.Rptr. 383]. ▇ These include acts, conduct or declarations of the accused tending to show his guilt, false denials of knowledge of the goods and attempted disposition of the goods for less than value. All of these factors are established by uncontradicted evidence in the present record. ▇ Mere possession of stolen property coupled with opportunity to have stolen it will not sustain a conviction. However, opportunity is a factor that is admissible and may be considered along with other inculpatory conduct. (*People* v. *Viets,* 79 Cal.App. 576 [250 P. 588]; *People* v. *Lancellotti,* 147 Cal.App.2d 723 [305 P.2d 926].) ▇ In view of the uncontradicted evidence of the transaction in the motel room, the evidence is not only sufficient to sustain the verdict as a matter of law but its total impact is so conclusive that we fail to see that the brief references made by the district attorney during argument to defendant's failure to testify or the court's instruction re adverse inferences that could be drawn therefrom had any determinative effect upon the verdict.

▇ When the deputy sheriff had testified to defendant's statements that he did not want to involve Lockett and that he knew he was going back to "the joint," the district attorney asked, "Did that word ['joint'] have any particular significance to you?" Defense counsel's objection that the question called for a conclusion was overruled and the deputy answered: "The significance it had to me is during the time I have worked on the sheriff's department, having interrogated numerous people, particularly those who have ever served any time, ninety-five times out of a hundred these people will refer to the state prison as the 'joint.'" A motion to strike was denied. Prejudicial error is claimed because the answer contained the obvious inference that defendant was one of "these people" who had served time in a state prison because of a prior felony.

If the question is interpreted as asking for a definition or explanation of "the joint," the objection was properly overruled. Although slang usage may vary with time, place and even group, the meaning of a particular expression may be put into evidence pursuant to Code of Civil Procedure section 1875. (*People* v. *Powell,* 1 Cal.App.2d 222 [36 P.2d 201]; *People* v. *Moore,* 211 Cal.App.2d 585 [27 Cal.Rptr. 526].) If an accurate and objective definition is supplied by a witness rather than by declaration of judicial knowledge as required

by section 2102 of said code, it is difficult to conceive that prejudice would result from the mere technical departure from the code rules. However, the answer here given goes considerably beyond objective and accurate definition. The motion to strike was well taken and should have been granted.

Defendant contends that when addressed to the issue of consciousness of guilt the statement should not have been admitted because it has little probative force when compared to the prejudicial effect of the inference of a prior felony conviction that inheres therein. A like contention was rejected in *People* v. *McKay*, 107 Cal.App.2d 519 [237 P.2d 345], wherein a defendant's statement that he would not talk unless he could be assured of a return to the California Youth Authority was held to be admissible. Defendant's statement herein appears to be both an acknowledgment of his awareness that the prosecution had sufficient evidence to secure a conviction and an explanation of his refusal to supply further details that might uselessly involve his companion Lockett. The statement was relevant to the issue of consciousness of guilt and was therefore admissible.

The prejudicial effect of the erroneous denial of the motion to strike is measured by article VI, section 4½, of the California Constitution. As we have noted, the meaning of the words "the joint" can be supplied upon retrial. Although undue personal emphasis was contained in the purported definition herein, the same inference of a prior conviction of felony would be present upon retrial when the meaning of the words "the joint" is properly in evidence. In view of the strength of the uncontradicted and unexplained circumstances that support the finding of guilt, we cannot conceive that a result more favorable to the defendant would be reasonably probable with the objectionable portions of the deputy sheriff's discursive and interpretative definition eliminated. The error, either separately or in combination with the anti-*Griffin* error heretofore discussed, is not prejudicial within the rule enunciated in *People* v. *Bostick*, 62 Cal.2d 820 [44 Cal. Rptr. 649, 402 P.2d 529].

The order denying the motion for a new trial being nonappealable the appeal therefrom is dismissed.

The judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 6, 1966. Peters, J., was of the opinion that the petition should be granted.