PIERCE, P. J.
This appeal has been before ns before. (People v. Gills (1966) 241 Cal.App.2d 711 [50 Cal.Rptr. 872].) A hearing by the Supreme Court was denied. Certiorari was granted defendant by the United States Supreme Court vacating the judgment and remanding the case to this court “for further consideration in light of Chapman v. California, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].” (Gills v. California, 387 U.S. 574 [18 L.Ed.2d 966, 87 S.Ct. 2069].) Pursuant to that direction we recalled the remittitur, counsel was reappointed, the appeal was rebriefed and reargued.
After the reconsideration directed by the United States Supreme Court, we have reached the conclusion, for reasons discussed below, that Griffin-type[1] error tested by the stricter requirements of Chapman, supra, commands reversal.
The facts are fully set forth in our earlier opinion. Only summarization sufficient to give the discussion to follow understandability is required.
Defendant appealed from a judgment following conviction of grand theft of saddles from a Colusa County farm where he had previously been employed on a season-to-season basis. He admitted three prior felony convictions. His employment had been terminated on October 29, 1964.[2] The theft of the saddles and other tack was on October 31, 1964. Two of the saddles were recovered in the motel room of one Dick Lockett at Gayway, Idaho, a suburb of, and across the border from, Ontario, Oregon, on November 18th. Lockett offered the saddles for sale to a saddle dealer, Swisher. A sale was effected. Defendant was present during the negotiations. Swisher eounteroffered to buy one of the saddles (worth about $180) for $50. Swisher, a prosecution witness, testified that Lockett asked defendant if they should sell, and defendant replied, “Well, we are losing money on it. ’ ’ Other prosecution evidence included the fact that Lockett and defendant had been observed talking together at the farm during the period of defendant’s employment.
Defendant was suspected of having stolen the saddles. He was apprehended in Davis in December. He was interrogated in the Davis city jail after a warning adequate to meet the Escobedo-Dorado requirements. (Escobedo v. *810 Illinois, 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]; People v. Dorado, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].) He denied theft of the saddles or any knowledge of the fact of the theft. Defendant was driven to Colusa. During the ride he reiterated his denials. After having been told by the arresting officer that the latter knew he and Lockett had sold one of the saddles, defendant, while repeating his denial of commission of the theft, first stated: ‘ ‘ There are no more saddles from north of Vale.” (Vale is a village in Oregon a mile or two from Ontario.) Later, upon ascertaining that Lockett was also a suspect, he said he did not want to get Lockett involved and acknowledged that he knew he was going back to the ‘ ‘ joint. ’ ’
At the trial defendant did not take the stand; in fact, he offered no evidence except a schedule showing the periods of employment of defendant at the farm.
The ease was tried prior to Griffin v. California, supra, 380 U.S. 609, proscribing both comment by the prosecutor and instruction by the court regarding the inferences a jury could draw from the failure of a defendant to take the stand. As was customary pre-Griffin, both forbidden practices occurred at the trial. The court’s instruction was the customary one; the prosecutor’s comment during argument is set forth in the margin.[3]
In our former opinion (on p. 717 of 241 Cal.App.2d) we considered the prejudicial effect of the error under the mandate of article VI, section 13 (then § 4½) of the California Constitution using the test enunciated in People v. Bostick, 62 Cal.2d 820, 823-824 [44 Cal.Rptr. 649, 402 P.2d 529], As stated above, it is now necessary that we apply the *811 stricter test of Chapman v. California, supra, 386 U.S. 18. It is unnecessary for us to restate the differences between the two. The requirements of the Chapman rule recently have been explained by our Supreme Court in People v. Coffey, 67 Cal.2d 204, 219-220 [60 Cal.Rptr. 457, 430 P.2d 15]; in People v. Ross, 67 Cal.2d 64, 73-75 [60 Cal.Rptr. 254, 429 P.2d 606] ; and in People v. Modesto, 66 Cal.2d 695, 711-713 [59 Cal.Rptr. 124, 427 P.2d 788], Repetition here would be redundant. Briefly, under the Chapman rule we must now be convinced beyond a reasonable doubt that the jury, notwithstanding the error, would have reached the guilty verdict. We cannot say we are so convinced here.
Excepting for the extrajudicial statement to the deputjr sheriff, all of the evidence was circumstantial. Lockett alone, as easily as defendant or defendant and Lockett, could have committed the actual theft of the saddles. Or the thief could have been a stranger who thereafter sold the saddles to Lockett and defendant. (It will be recalled that defendant had stated: “Well, we are losing money on it.”) Had the jury drawn those inferences defendant would have been guilty at the most of receiving stolen goods.
The meaning of the statement: “There are no more saddles north of Yale,” is somewhat cryptic. Defendant’s other extrajudicial statements were inculpatory; but they were neither admissions nor confessions. A trier of fact might reasonably have inferred that defendant was shielding Lockett. Again, the statements were as consistent with an admission of receiving stolen goods as they were with an acknowledgement of theft.
If one accepts the rationale of Griffin v. California, supra, 380 U.S. 609, the argument of the prosecuting attorney anent defendant’s failure to testify (see fn. 3) could have been devastatingly effective. The instruction by the court could have nourished the sown seed. We cannot say beyond reasonable doubt it would not have driven from a reasonable juror’s mind another court instruction which included the admonition that “If the evidence ... is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant’s innocence, and reject that which points to his guilt. ’ ’
The distinction between the Chapman test and the Bostick *812 test is a delicate one, difficult for a reviewing court to make. In this case a close analysis of the entire record now requires us to resolve the issue in defendant’s favor.
The judgment is reversed.
Friedman, J., and Regan, J., concurred.

 Griffin v. California, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

The year is incorrectly stated in the reported opinion of People v. Gills, 241 Cal.App.2d 711, 713 [50 Cal.Rptr. 872], as 1954.

“There is a peculiar situation in this ease. The defendant attacks our evidence, he says we haven’t proven anything. Does he ever deny it from this stand? As I said before, the average person unjustly accused is going to take his first opportunity to do just exactly that. I think the court will also instruct you that the defendant naturally has a right—an absolute right—to testify in his own behalf in a criminal trial. I believe that court will instruct you that if the defendant does not exercise his right to deny or explain from the witness stand evidence against him when he is in a position to deny or explain, that is, that he has sufficient knowledge to deny or explain, the fact of his refusal to do so may be considered by you as tending to indicate that that evidence against him is true. That’s the law of this state. And further that among the inferences to be drawn from this evidence is the inference that those unfavorable to the defendant are the more probable. Just exactly the situation we have here. The defendant as a practical trial matter can’t take the stand because he can’t really deny these facts. He cannot construct a story which is going to make him innocent, so to speak, which is going to explain his possession as being an innocent possession. He is not in a position to do that. He can’t do it. Obviously that is why he hasn’t taken the stand. ”