[Crim. No. 4712.    Third Dist.    Dec. 6, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS BURNS PATER, Defendant and Appellant.

Ralph D. Drayton, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws, Nelson P. Kempsky and Michael H. Fabian, Deputy Attorneys General, for Plaintiff and Respondent.

PIERCE, P. J.—Defendant was convicted by a jury of (1) grand theft—auto (Pen. Code, § 487, subd. 3), and on a separate count of (2) taking or driving a vehicle without the owner's consent (Veh. Code, § 10851). He was sentenced on both counts.

On June 12, 1967, defendant, an unemployed parolee, was arrested while driving a 1967 Ford Mustang, which had been stolen from the lot of a Sacramento Ford dealer sometime during the night of June 7-8. That automobile, when defendant was arrested, carried license plates and a registration certificate which had been removed and stolen several days earlier from another 1967 Ford Mustang. Substantial circumstantial evidence was adequate to prove that the theft of the license plates and subsequent theft of the automobile had been perpetrated by defendant: Defendant's arrest on June 12 was accomplished only after a chase. The chase had commenced when officers in a patrol car had approached the stolen car being operated by defendant and had signaled for him to

stop. Defendant did not stop. Instead he sped away. When defendant was apprehended a screw-driver suitable for removing and installing license plates was found in the pocket of defendant's jacket.

A Miss Widby was a prosecution witness. She was an acquaintance of defendant. She had seen him driving the stolen Mustang in Sacramento June 11, 1967, and had conversed with him at the time. Earlier she had seen him driving a Chevrolet. When Miss Widby questioned defendant about the change of automobiles he said he had "traded his Impala in on this car. . . ." Defendant's presence in Sacramento at the time of his arrest was in violation of a condition of his parole.

Defendant's contention of insufficient evidence to support the verdict and judgment of theft of the automobile is without merit. Possession of recently stolen property is so incriminating that to warrant a conviction of theft there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show guilt. (*People* v. *McFarland* (1962) 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Gills* (1966) 241 Cal.App.2d 711, 715-716 [50 Cal.Rptr. 872]; *People* v. *Hopkins* (1963) 214 Cal.App.2d 487, 491-492 [29 Cal.Rptr. 636].) Flight. in addition to other corroborating evidence, is significant. (*People* v. *Wells* (1960) 187 Cal.App.2d 324, 329 [9 Cal.Rptr. 384].)

The contention that it was error to enter judgment for *both* the offense of grand theft and the offense of violation of Vehicle Code section 10851 cannot be as readily answered. The offense of violation of Penal Code section 487, subdivision 3, is defined:

"Grand theft is theft committed . . . : 3. When the property taken is an automobile. . . ."

In California the catch-all section (Pen. Code, § 490a) has combined several crimes—larceny, embezzlement, stealing—under one name, "theft." Theft is defined in Penal Code section 484. The definition includes the taking or driving away of the personal property of another. When that personal property is an automobile the offense falls within the offense "grand-theft—auto" as stated in Penal Code section 487, subdivision 3. Conviction of that offense requires proof of a specific intent by the accused to deprive the owner of the automobile permanently. (*People* v. *Renteria* (1943) 60 Cal.App.2d 463, 472-473 [141 P.2d 37].) Vehicle Code section 10851 pro-

scribes the driving or taking by a defendant of a vehicle "not his own, without the consent of the owner thereof, and with intent either *permanently or temporarily* to deprive the owner thereof of his title to or possession of the vehicle . . . ." (*DeMond* v. *Superior Court* (1962) 57 Cal.2d 340, 344 [19 Cal.Rptr. 313, 368 P.2d 865].) (Italics ours.)

The two counts of the information charging defendant did not purport to cover the same offense. The *theft* (under Pen. Code, § 487, subd. 3) was stated in the information in count 1 to have been committed on June 8th when the Mustang was taken from the dealer's car lot. The driving "and" taking under count 2 in violation of Vehicle Code section 10851 was allegedly the act of defendant in driving the stolen vehicle on the day he was arrested, June 12.

The question is whether, under the circumstances of this case, the prosecution could or did actually prove two separate crimes. The problem may be stated with greater particularity: When the prosecution relies on the same evidence—no more, no less—to prove the original theft as is used to prove the Vehicle Code section 10851 violation, may the defendant be convicted of both offenses? We hold that he may not.

### "MULTIPLE PUNISHMENT" OF "NECESSARILY INCLUDED" OFFENSES

The term "necessarily included" offense derives from Penal Code section 1159. It provides that the trier of fact may find the defendant guilty of any offense "the commission of which is necessarily included in that with which he is charged . . . ." There is no statutory definition of what a "necessarily included offense" is. (Witkin, Cal. Criminal Procedure (1963) § 541, p. 552.) The traditional case law test is: "Where the offense charged cannot be accomplished without in the process committing the lesser offense, that lesser offense is a necessarily included offense." (Witkin, *id.*, p. 553; *In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5].) The existence of a necessarily included offense implies the perpetration of one act or omission—as one act or omission has been construed by our Supreme Court. (*People* v. *Greer* (1947) 30 Cal.2d 589, 600 [184 P.2d 512].) Where a defendant has been convicted of the greater offense he cannot thereafter be convicted for the necessarily included offense by a second prosecution. (Pen. Code, § 1023; *People* v. *Greer, supra.*) Also he cannot be punished *or convicted* for both the greater and lesser included offenses in a single prosecution. (Pen. Code, § 654; *People* v. *Tideman* (1962) 57 Cal.2d 574,

582 [21 Cal.Rptr. 207, 370 P.2d 1007].) Prior to *People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456], the traditional test based upon the elements of the crimes involved was the sole test to determine whether an offense was "necessarily included." (Witkin, *id.*, p. 553.) *People* v. *Marshall*, incidentally, involved the status of a violation of Vehicle Code section 503 (now § 10851), as a lesser included offense within robbery (Pen. Code, § 211). Because robbery need not be of an automobile, violation of Vehicle Code section 10851 is not necessarily included under the "statutory elements of crime" test. There the accusatory pleading, however, was not in the statutory language. An automobile was alleged to have been one of the items stolen. *Marshall* affirmed a conviction of the lesser offense (Veh. Code, § 10851) under the "necessarily included offense" doctrine. Since *Marshall*, "necessarily included" offenses have been tested by comparing the two charges as specified in the accusatory pleadings. We apply these rules to the facts of the case before us.

By definition—even under the earlier test—all of the elements of Vehicle Code section 10851, as now framed, are necessarily included within grand theft—auto (Pen. Code, § 487). (*People* v. *Marshall, supra,* 48 Cal.2d 394, 400; *People* v. *Crawford* (1953) 115 Cal.App.2d 838, 840 [252 P.2d 963].) Under the *Marshall* test it is also correct to say that the two counts in the accusatory pleading relate *to the same act.*

Our California Supreme Court, commencing with *Neal* v. *State of California* (1960) 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], has by a series of opinions defined and construed "act or omission" as applied to California's "multiple punishment" statute. (Pen. Code, § 654.) That section provides that an "act or omission which is made punishable in different ways by different provisions of this Code[1] may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other." *People* v. *Quinn* (1964) 61 Cal.2d 551, holds at pages 555-556 [39 Cal.Rptr. 393, 393 P.2d 705]: "The section applies not only where there is one act in the ordinary sense, but when there is a course of conduct that constitutes an indivisible transaction punishable under more than one statute. [Citations.]" *Neal* v. *State of California,*

[1]The language "this Code" has been construed to include offenses created by other codes. (*People* v. *Brown* (1958) 49 Cal.2d 577, 591, note 4 [320 P.2d 5].)

*supra,* 55 Cal.2d at page 18, pointed out that "[t]he proscription of section 654 against multiple punishment of a single act . . . is not limited to necessarily included offenses."

We explain why we commenced this dissertation with the principles involved in necessarily included offenses rather than with the "multiple punishment" rules. ■ When a multiple punishment is involved under facts which *do not* encompass necessarily included offenses a *conviction* may stand although the *punishment* must be expunged. (*People* v. *Smith* (1950) 36 Cal.2d 444, 448 [224 P.2d 719].) But, as we have shown, when a necessarily included offense is involved, *the conviction also must be reversed.*

■ The Attorney General points to the fact that in the accusatory pleading the grand theft—auto charge (count 1) is alleged to have occurred on June 8, 1967, while the violation of Vehicle Code section 10851 (count 2) is alleged to have occurred on June 12, 1967, when defendant was apprehended. Respondent recognizes the "indivisible course of conduct" rule but sees a break in the sequence of events once the theft of the automobile has been consummated which makes the driving of the car thereafter a disassociated, separate and severable transaction. We do not accept that argument.

As we have explained above, under count 1 the jury in the case before us could properly have convicted defendant of grand theft—auto (Pen. Code, § 487, subd. 3) OR of violating Vehicle Code section 10851, a necessarily included offense. (Pen. Code, § 1159; *People* v. *Marshall, supra,* 48 Cal.2d 394; *People* v. *Crawford, supra,* 115 Cal.App.2d at p. 841.) The allegation (in count 2) that the Vehicle Code violation occurred four days after the violation of the Penal Code section did not, however, set forth a second, separate, divisible crime. The allegations of both counts relate simply to the proof relied upon to sustain a conviction for either offense. The charge in count 2 is duplicatory of the offense necessarily and impliedly charged in count 1. It is a manifestation of the continuous character of the offense. This wilful, wrongful taking and possession continued until interrupted four days later when defendant was caught.

There was just one continuous, indivisible, inseverable act or course of conduct which, as we see it, would have retained its indivisible status so long as defendant retained the original dominion over the property obtained by the original theft. Neither clocks, calendars nor county boundaries convert one continuing course of conduct into a series of criminal acts. He

who steals an automobile, steals it for use—whether that use be personal, for resale, gift, consumption, abandonment or some other form of ultimate disposal.

Thus, the act charged under count 2 was a lesser included offense under count 1. It need not have been pleaded as a separate count, and it cannot be transformed into a separate severable offense by doing so. (*People* v. *Logan* (1953) 41 Cal.2d 279, 290 [260 P.2d 20]; *People* v. *Greer, supra,* 30 Cal.2d 589, 597-599.)

One of the cases cited in *People* v. *Quinn, supra,* 61 Cal.2d 551, is *People* v. *Kehoe* (1949) 33 Cal.2d 711 [204 P.2d 321]. There an automobile had been stolen by defendant in Humboldt County. It had been driven to Salinas where defendant was apprehended. In an information filed in Humboldt County defendant was charged in two counts, one under Penal Code section 487, and the other under Vehicle Code section 503 (now section 10851). There it was held that the double punishment statute (Pen. Code, § 654) prevented sentencing under the charge for violation of the Vehicle Code section.

The Attorney General attempts to distinguish the *Kehoe* decision. There is dictum in *Kehoe* which *superficially* could be construed to support the Attorney General's position. It is stated (on p. 715 of 33 Cal.2d): ''The record here under review shows a theft completed in Eureka and Kehoe's arrest one week later while driving the automobile in Salinas. Upon this evidence he might *also* have been prosecuted in Monterey County for driving an automobile without the owner's permission.'' (Italics ours.)

That sentence might be construed to mean that double prosecutions and convictions might have been had; in Humboldt County (for the theft) and a second prosecution thereafter in Monterey County for the driving.[2] If that is what the Supreme Court meant, it is bad law. The result would be there could be a separate cumulative prosecution and punishment in every county through which the thief drives a stolen car and for every day (or perhaps every hour or minute) he drives it. The *Kehoe* case itself might be used for illustration. It was known that Kehoe had driven the stolen car in Alameda County where he had bought gas. And, of course, to get to Monterey County from Humboldt County he had had to go through many counties. A reductio ad absurdum will some-

[2]That is apparently the way Justice Carter construed it in his concurring opinion in *Kehoe,* 33 Cal.2d at page 716.

times point up an atrocious postulation. Our Constitution (art. I, § 13) prohibits double jeopardy. Penal Code section 687 implements it. Penal Code section 654, as we have shown, prohibits multiple punishment and multiple prosecutions for the same and necessarily included offenses. Penal Code section 1023 is another bar for double prosecution on the same or necessarily included offenses.

We do not think the Supreme Court intended to prophesy a result running cruelly counter to all civilized concepts. No conceivable public policy could rationalize such a rule either as a matter of statutory interpretation or judicial rule making.

Our explanation of the *Kehoe* dictum is that the court intended to state that either the District Attorney of Humboldt County or the District Attorney of Monterey County (or the District Attorney of Alameda County for that matter) might legally have prosecuted defendant, but that there could neither be multiple prosecutions nor multiple punishment. That interpretation is justified by the fact that the sentence quoted from the *Kehoe* opinion is buttressed by citation of the case of *People* v. *Cuevas* (1936) 18 Cal.App.2d 151 [63 P.2d 311]. *Cuevas* was not a multiple prosecution case. There a car had been stolen. Defendant was prosecuted under Vehicle Code section 503 for driving the stolen car under conditions proscribed by that section. The car had been stolen on a date which, if prosecution had been for grand theft, would have brought the proceedings within the bar of the statute of limitations. It was held that that fact did not bar an action under section 503. In other words, the holding of *Cuevas* goes only to the extent of saying that the running of the period of limitations does not give either to the thief or person knowingly using a stolen automobile a prescriptive right either of ownership or possession by adverse possession. We do not believe that the *Cuevas* holding demands a rule permitting continuous cumulative actions against the thief under the Vehicle Code section. The judgment under Vehicle Code section 10851 must be reversed.

### THE EFFECT OF A POORLY-FRAMED INSTRUCTION INVOLVING PROOF OF SPECIFIC INTENT

Defendant contends that error was committed in the giving of an instruction to the jury supplementing the instructions on specific intent. He concedes that ''specific intent'' was adequately explained to the jury which was also informed that both counts charged were ''specific intent''

crimes. The judge then attempted an instruction under CALJIC 27-A (New). That instruction reads: ''The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in [Count . . .] unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to . . . but are irreconcilable with any other rational conclusion.'' Instead of repeating the instruction to cover each count separately, the judge undertook so to frame CALJIC 27-A as to make one reading suffice for both counts. In doing so, he got into syntactical difficulties. He said: ''The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in Count 1 of this case unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to permanently deprive the owner of his property as alleged in Count 1 OR to either permanently or temporarily deprive the owner of his title to or possession of the vehicle as alleged in Count 2 but are irreconcilable with any other rational conclusion.''

Those two sentences droned monotonically are incomprehensible. We have only a clerk's transcript of the instructions given. As written the instruction does not furnish even the usual punctuational aids. We believe it would be possible, however, so to read the instruction that the listening jury would understand by the inflections of the judge's voice and by suitable pauses that he was telling it that, as to each count separately considered, the jury must not find the defendant guilty unless the proved circumstances were irreconcilable with any rational conclusion other than that the defendant had had the specific intent required to establish guilt as to that offense. We do not think that this reviewing court should assume that the judge so read the instruction that a false definitive message of the separate elements of the two offenses got through to the jurors. (See *People* v. *Jones* (1926) 78 Cal.App. 554, 560 [248 P. 964], hg. den.)

The complaint is that the jury might have been left with a belief that it could find the defendant guilty of grand theft even were it to find from the evidence that defendant intended only to deprive the owner of possession of his property temporarily. But instructions must be read as a whole. (*Lerner* v. *Glickfeld* (1960) 187 Cal.App.2d 514, 523

[9 Cal.Rptr. 686], hg. den.) When we read the instructions as a whole the jury could not possibly have been left with that impression. Elsewhere in the instructions the judge defined and distinguished each of the two charged offenses clearly. He also stated fully and correctly the specific intent requisite to consummate the separate crimes and he distinguished between each. He had also instructed the jury "if the evidence (as to any particular count) is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject the other which points to his guilt."

We have read the judge's charge to the jury carefully. Considering it as a whole, and leaving the objected-to instruction in context, the charge was accurate and fair. The trial was fair. Not every inaccurate instruction necessitates a reversal. In considering under the *Watson* test (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]), whether there has been a miscarriage of justice under California Constitution article VI, section 13, we consider first the nature of the error found as applied to the facts of the particular case. (*People* v. *Woods* (1950) 35 Cal.2d 504 [218 P.2d 981].) We neither consider this error, in and of itself, very important, nor do we consider this a close case. We can conceive of no probability that the jury, absent the error—if it be deemed error—could have reached a result more favorable to the defendant.

The judgment under count 2 is reversed with directions to the trial court to dismiss count 2 of the information. In all other respects the judgment is affirmed.

Friedman, J., and Regan, J., concurred.

The petitions of appellant and of respondent for a hearing by the Supreme Court were denied February 26, 1969. Peters, J., was of the opinion that the petitions should be granted.