[Crim. No. 4204. Fifth Dist. Jan. 9, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ELLA MAE BURNEY, Defendant and Appellant.

**COUNSEL**

George L. Schraer, Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Julia Cline Newcomb, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Charles J. James, Nancy Sweet and David De Alba, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HAMMERBERG, J.\***—Appellant was convicted after a nonjury trial of voluntary manslaughter (Pen. Code, § 192, subd. 1) with the use of a firearm (Pen. Code, § 12022.5) and assault with a deadly weapon (Pen. Code, § 245, subd. (a)) with personal use of a handgun. Appellant was found sane on her not guilty by reason of insanity plea.

On August 12, 1978, at approximately 2:30 a.m. in Wagner's, a bar in West Fresno, appellant shot Willie Mae Williams, and then immediately shot through a crowd of patrons and hit Lester Grant which resulted in his death. The shooting was the result of a quarrel which involved shoving, pushing, and slapping. The victims were unarmed and the provocation was minimal.

### MENTAL COMPETENCE TO STAND TRIAL

Appellant contends that there was substantial evidence to warrant the trial judge to *sua sponte* order a hearing on appellant's mental competency to stand trial.

Penal Code section 1368, subdivision (a), provides in relevant part that: "(a) If, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant, he shall state that doubt in the record and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."

Appellant relies on *Pate* v. *Robinson* (1966) 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836], which stands for the proposition that an accused has a constitutional right to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense. Once such substantial evidence appears, a doubt as to the sanity of the accused exists and a hearing is mandatory no matter how persuasive other evidence, testimony of prosecution's witnesses, or the court's own observations of the accused may be to the contrary. (*People* v. *Pennington* (1967) 66 Cal.2d 508, 518 [58 Cal.Rptr. 374, 426 P.2d 942].)

---

*\*Assigned by the Chairperson of the Judicial Council.

What constitutes substantial evidence in a proceeding under section 1368 cannot be answered by a simple formula applicable to all situations. (*People* v. *Laudermilk* (1967) 67 Cal.2d 272, 283 [61 Cal.Rptr. 644, 431 P.2d 228], cert. den. 393 U.S. 861 [21 L.Ed.2d 128, 89 S.Ct. 139].) Where there is no substantial evidence to raise the required doubt in the mind of the trial judge the failure to proceed under section 1368 *sua sponte* is not error. More is required to raise a doubt than mere bizarre actions, or bizarre statements, or statements of defense counsel that defendant is incapable of cooperating in his defense, or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense. (*Id.*, at p. 285.) ▮ It is not enough that an expert state that the defendant is mentally ill or insane to satisfy the substantial evidence test. (*People* v. *Zatko* (1978) 80 Cal.App.3d 534, 548 [145 Cal.Rptr. 643].) The expert must state with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel. (*People* v. *Pennington, supra*, 66 Cal.2d 508, 519 [58 Cal.Rptr. 374, 426 P.2d 942].) However, a single doctor's report which concludes that the defendant is incapable of standing trial, even in the face of other reports to the contrary, is substantial evidence requiring that a section 1368 proceeding be instituted. (*People* v. *Zatko, supra*, 80 Cal.App.3d 534, 547.)

▮ Appellant relies on the testimony of two of the three psychiatrists who testified at the sanity phase of her trial. Initially it should be noted that the doctors were directing their opinions to a different time frame, i.e., to the time of the offense rather than to present mental incompetence, as well as to a different criteria, i.e., the American Law Institute test adopted in *People* v. *Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318], which relates to guilt, while section 1368, present mental incompetence, relates to understanding the proceedings and assisting counsel to conduct a defense in a rational manner.

The record does not indicate that at any time cognizable to the trial judge a section 1368 hearing should have been commenced. No psychiatrist expressed an opinion that the defendant was incompetent to stand trial.

Appellant is in essence asking this court to infer that there is substantial evidence of incompetence from evidence that was addressed to a *different subject*, and a *different time*. Nevertheless, it is appropriate to examine the testimony and the reports of the psychiatrists. Dr. Trevor Glenn, who examined the appellant twice, found that she suffered from a chronic brain syndrome which included deficits in memory, orientation, judgment, intellectual functioning, and rapid mood fluctuations. She was unable to recall who was the current President of the United States, thinking first it was Roosevelt and then Kennedy. She suffered from visual and auditory hallucinations at his second examination. In explaining his observations Dr. Glenn testified that the delusional feelings of the appellant related to one woman (the victim). Dr. Glenn was explaining his view on how the appellant thought she was acting in self-defense, and how that was applicable to the American Law Institute test relative to guilt. Dr. Glenn did not express an opinion that she was unable to understand the nature of the proceedings, or to assist counsel in conducting a defense in a rational manner.

Although the issue at the trial was competence as it affects criminal conduct, Dr. Simmang offered the following in a report (and testified to the same in substance at trial) that: "It is my medical opinion that although Ella May Burney, defendant, has a severe mental disorder in partial remission, she is capable of understanding the nature of the charges against her and to cooperate with her counsel in the conduct of her defense in a rational manner." Dr. Levy is the least help to the appellant. It was his opinion that the appellant must be considered to be completely sane from a legal standpoint, and that her mental status at the time of the shooting was such that she would have been aware of the criminality of any actions that she may have undertaken to conform her conduct to the requirements of law.

Taking into consideration the entire record we cannot hold as a matter of law that the trial judge abused his discretion in not commencing a section 1368 proceeding *sua sponte*.

## SENTENCE

The appellant assigns as improper the trial judge's use of the following factors in aggravation of the sentence: (1) a manslaughter conviction of the appellant in 1959, and (2) that the offenses involved two victims (multiple victims). *People v. Covino* (1980) 100 Cal.App.3d

660, 672 [161 Cal.Rptr. 155], answers the appellant's concerns although that case was remanded for resentencing. The *Covino* court seems to suggest that it is not necessary to compartmentalize the particular aggravating factor inasmuch as the list of aggravating factors is not exhaustive and additional criteria reasonably related to the decision being made may be applied. (See Cal. Rules of Court, rule 408 (a), which allows for additional criteria.)[1] In *Covino*, it is indicated that it does not matter whether the court was considering the presumed fact of appellant's prior conviction (i.e., applying rule 421 (b) (3)), or considering a pattern of violent conduct (rule 421 (b) (1)) (*id.*, at p. 670). Although the trial court need only act on one aggravating factor as pointed out in *Covino*, in this instance it appears that the trial judge relied on several: involvement of two victims (rule 421 (a) (4)) which is permissible because the crimes were transactionally related (*People* v. *Guevara* (1979) 88 Cal.App.3d 86, 93 [151 Cal.Rptr. 511]);[2] the victims were unarmed and the provocation was minimal; and the instant offenses were of the same nature as the manslaughter by appellant in 1959.

Rule 409 states: "Relevant criteria enumerated in these rules shall be considered by the sentencing judge, and shall be deemed to have been considered unless the record affirmatively reflects otherwise."

■ Although we find that the trial judge cited proper aggravating factors in imposing the upper base term, we nevertheless find that the trial judge erred when he stated "The Court finds no circumstances in mitigation." The presumption of rule 409 was thus rebutted. The record discloses the appellant's past performance on parole was good (see probation officer's report). That circumstance is a factor to be considered in mitigation (rule 423 (b) (6)). Also the appellant acknowledged wrongdoing at an early stage of the criminal proceedings (i.e., shortly after her arrest). That factor likewise is a circumstance to be considered in mitigation (rule 423 (b) (3)). Additionally the court may wish to consider any mental condition which might significantly reduce defendant's culpability for either of the crimes (rule 423 (b) (2)).

Because mitigating circumstances did exist, appellant is entitled to a new hearing on the question of circumstances in mitigation and aggra-

---

[1] All references to rules are to the California Rules of Court.

[2] *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 758 [165 Cal.Rptr. 764], is distinguishable because the crimes there were on two different days and were not transactionally related.

vation. It does not follow that appellant is entitled to a new hearing on her application for probation, because the court denied probation for other sufficient reasons. (*People* v. *Covino, supra*, 100 Cal.App.3d 660, 672.)

## The Abstract of Judgment

■ Appellant contends that the abstract of judgment must be modified to reflect that the sentence for count two has been stayed.[3] The reporter's transcript of the sentencing hearing shows that the court stayed execution of sentence for count two. The abstract of judgment does not reflect that count two was stayed. The abstract of judgment may be corrected to reflect the oral pronouncement of sentence which is controlling. (*People* v. *Mesa* (1975) 14 Cal.3d 466, 471 [121 Cal.Rptr. 473, 535 P.2d 337]; *People* v. *Gardner* (1979) 90 Cal.App.3d 42, 50, fn. 8 [153 Cal.Rptr. 160].)

The sentencing judge probably concluded from the probation officer's report that he had a Penal Code section 654 situation, i.e., the proscription against multiple punishment for an act punishable in different ways but not punishable for more than one. In that situation the proper procedure is to sentence defendant on all counts and stay execution of sentence on the lesser count(s) pending service of sentence on the greater.

In the instant case appellant committed crimes of violence against different victims. Therefore Penal Code section 654 does not apply. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) Thus the sentencing court is without authority to stay the second count. The trial judge properly sentenced on both counts, and in exercising his discretion ordered that the sentences were to run concurrently.

## Sentence Credits

■ Appellant contends that Penal Code sections 2900.5 and 4019 entitled her to good-time/work-time credits for presentence custody.

---

[3]The trial judge in part pronounced judgment as follows: "The Court hereby orders that execution of the term of imprisonment for the offense charged in the second count of the Information shall be stayed pending any appeal from this judgment stated and become permanent upon completion of the unstayed term of imprisonment imposed by this judgment."

The Supreme Court decision in *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], holds that equal protection compels such conduct credits.

### DISPOSITION

The convictions are affirmed. The cause is remanded to the superior court for a new hearing on the question of aggravation or mitigation of the terms imposed for counts one and two and for resentencing. At that time the superior court is directed to determine the presentence conduct credits to which appellant is entitled and to amend the abstract of judgment if needed.[4]

Brown (G. A.), P. J., and Hopper, J., concurred.

---

[4]If the court decides after considering the factors in mitigation and aggravation that the same sentence is appropriate then the abstract of judgment is correct in that respect because it does not show the sentence on count II being stayed.