[Crim. No. 21744. First Dist., Div. Three. Oct. 21, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD EDDIE RATCLIFFE, Defendant and Appellant.

COUNSEL

Coleman Bresee, under appointment by the Court of Appeal, and Bresee & Bresee for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart, Kristofer Jonstad and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WHITE, P. J.—

### Procedural History

On May 19, 1978, a jury found defendant and appellant Ronald Ratcliffe guilty of kidnaping (Pen. Code, § 207), oral copulation by force (Pen. Code, § 288a, subd. (c)), forcible rape (Pen. Code, § 261, subd. 2), and false imprisonment (Pen. Code, §§ 236-237). The jury also found that appellant used a dangerous weapon (a knife) in the commission of the false imprisonment charge within the meaning of Penal Code section 12022, subdivision (b). On June 16, 1978, the Honorable Richard W. Rhodes sentenced appellant to a term of imprisonment of

seven and one-third years: five years on the rape charge (the upper base term); one and one-third years on the kidnaping charge; and one year on the oral copulation charge. A concurrent term of one year was also imposed on the false imprisonment charge. This court, in *People* v. *Ratcliffe* (Nov. 6, 1979) 1 Crim. 18566, [unpub. opn.], authored by Scott, J., affirmed the judgment.[1]

On April 16, 1980, appellant filed a petition for writ of habeas corpus in the Santa Clara County Superior Court contending (1) the trial judge failed to state his reasons for imposing consecutive rather than concurrent terms; and (2) the imposition of sentence on the kidnaping and false imprisonment charge was violative of the prohibition against multiple punishment contained in Penal Code section 654. On May 30, 1980, the Honorable Peter G. Stone, judge of the Santa Clara County Superior Court, granted appellant's petition insofar as it claimed an impropriety in the imposition of consecutive sentences and directed that appellant be returned to the Santa Clara County Superior Court for resentencing.

On August 1, 1980, appellant appeared before the Honorable Richard W. Rhodes for resentencing. Judge Rhodes found that Penal Code section 654 was not applicable "to these four charges" and sentenced appellant to a term identical to the previously imposed sentence except that the concurrent term on the false imprisonment charge was three years.

Appellant has appealed from the sentence imposed on August 1, 1980,[2] and contends on appeal that (1) the imposition of consecutive sentences for kidnaping, rape and oral copulation violated the multiple punishment prohibition of Penal Code section 654; (2) the imposition of a sentence for false imprisonment violated the multiple punishment prohibition of Penal Code section 654; (3) the court erred in using the same facts to impose an aggravated term and consecutive sentences; and (4) the inclusion of erroneous and irrelevant material in the probation report used at appellant's sentencing hearing was prejudicial and constituted a denial of due process of the law. We find that appellant was erroneously convicted of false imprisonment, a lesser included of-

---

[1] In his first appeal (1 Crim. No. 18566), appellant did not raise any of the issues that are presently before the court in the instant appeal.

[2] A sentence is deemed a final judgment for the purpose of an appeal. (Pen. Code, § 1237.)

fense of kidnaping. We affirm the remaining judgments of conviction, but remand for resentencing without the dual use of facts for imposition of aggravated and consecutive sentences.

### Facts

The bulk of the People's case was established through the testimony of Ms. Dillard,[3] the complaining witness. At this point a brief summary of that testimony evidencing appellant's shockingly flagrant felonious conduct will suffice. The jury's verdicts necessarily imply that they determined that appellant in the order designated (1) forcibly kidnaped Dillard (from her apartment via automobile to his own); (2) therein after physically threatening her with a baseball bat, he demanded her money; (3) her screams for help unanswered, he then required her to strip naked, tied her to a bed, terrorized and assaulted her with a knife blade, and then raped her; (4) before releasing her bonds, he forced her to orally copulate; and (5) after he untied her, appellant forced her to drink clorox and to swallow some pills. Fortunately, Dillard escaped by jumping or falling out a window two stories high. The "incident" lasted the better part of six hours and included the perpetration of humiliating, degrading and depraved sexual indignities upon Dillard that we summarily discuss hereinbelow. In light of the above perspective, we now discuss appellant's contentions of alleged sentencing errors.

### Multiple Punishment

■ Appellant contends that the imposition of consecutive terms for kidnaping, rape and oral copulation and a concurrent term for false imprisonment was violative of the prohibition against multiple punishment contained in Penal Code section 654.[4] Appellant argues that he cannot be punished for rape and oral copulation and also kidnaping and false imprisonment because the objective of the kidnaping and false imprisonment was to commit the sexual acts.

---

[3]Dillard was 19 years old in July of 1977. Appellant was approximately 27 years old.

[4]Technically, under Penal Code section 654 the imposition of sentence upon offenses that fall within the provisions of section 654 is correct, but the execution of the sentence on the offense which carries a less severe punishment, must be stayed with the stay becoming permanent upon the completion of the sentence on the offense which carries the more severe punishment. (*People* v. *Miller* (1977) 18 Cal.3d 873, 886 [135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 639-640 [105 Cal.Rptr. 681, 504 P.2d 905]; *In re Wright* (1967) 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998].)

Penal Code section 654 is applicable where multiple convictions are based on a single act or omission. Penal Code section 654 provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ."

■ The single act or omission is not the only test that is employed to determine the applicability of section 654. (*People* v. *Beamon, supra*, 8 Cal.3d 625, 637.) "The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398], cert. den. 400 U.S. 927 [27 L.Ed.2d 187, 91 S.Ct. 158].) "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct." (*People* v. *Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63].)

Appellant states "There is absolutely no evidence to support the conclusion that the kidnapping in the instant case had any 'independent purpose' . . . or was anything more than being 'merely incidental' to the 'principle [*sic*] objective' of the extended period of sexual gratification, which also included the use of a camera and tape recorder which were located in appellant's apartment." Appellant further asserts that the "sentence for false imprisonment enhanced by the [use] allegation suffers the same disability as the sentence for kidnapping."

The determination of whether the acts of which a defendant has been convicted constitute an indivisible course of conduct is generally a factual determination made by the trial court on the basis of the findings concerning the defendant's intent and objective in committing the acts.[5]

---

[5]In the instant case appellant's contention regarding the applicability of Penal Code section 654 was considered by the lower court just before appellant was resentenced. But it should be noted that the judge who presided at appellant's trial resentenced appellant.

If the determination is a factual one, it will not be upset on appeal unless unsupported by the evidence presented at trial. (*People* v. *Murphy* (1980) 111 Cal.App.3d 207, 213 [168 Cal.Rptr. 423]; *People* v. *Lee* (1980) 110 Cal.App.3d 774, 786 [168 Cal.Rptr. 231].) However, when there is no dispute as to the facts, the applicability of Penal Code section 654 is a question of law. (*People* v. *Perez, supra*, 23 Cal.3d 545, 552, fn. 5.) The lower court found after rather lengthy arguments by defense counsel and the prosecutor that Penal Code section "654 does not apply to these four charges." The lower court did not state the basis for its determination. In order for us to decide whether the lower court correctly determined that section 654 is not applicable to this case, it is necessary to look at the type of intent or objective which will support a finding that the crimes of which a defendant has been convicted constitute an indivisible course of conduct. We will first consider whether appellant can be punished for kidnaping and also rape and oral copulation.[6]

"Just as it is the *criminal* 'act or omission' to which section 654 refers, it is the *criminal* 'intent and objective' that we established as the test in *Neal* [*Neal* v. *State of California* (1960) 55 Cal.2d 11 (9 Cal.Rptr. 607, 357 P.2d 839)]. [Citations.] In *Neal* we found to be crucial not the defendant's possible intent and objective to acquire money, to gain revenge or to ignite gasoline, but only his intent and objective to commit murder." (*In re Hayes* (1969) 70 Cal.2d 604, 610 [75 Cal.Rptr. 790, 451 P.2d 430], italics in original; see also *In re Adams* (1975) 14 Cal.3d 629, 634-635 [122 Cal.Rptr. 73, 536 P.2d 473].) Therefore, a defendant cannot successfully assert that Penal Code section 654 is applicable to a series of separate thefts on the ground that his sole intent and objective was a desire for wealth. (*People* v. *Perez, supra*, 23 Cal.3d 545, 552; *People* v. *James* (1977) 19 Cal.3d 99, 119-120 [137 Cal.Rptr. 447, 561 P.2d 1135].) Nor is section 654 applicable in the instant case on the ground that appellant's sole intent and objective in committing the crimes of which he was convicted was to seek revenge because Dillard had rejected him. Nor is section 654 applicable merely because appellant's broad, although sole, intent and objective was to ob-

---

[6]In *People* v. *Perez, supra*, 23 Cal.3d 545, the California Supreme Court held that various sex offenses committed against one victim (although not divisible in time) could each be punished without violating Penal Code section 654 if none of the offenses were incidental to the other. It was, therefore, proper to punish appellant for both rape and oral copulation.

tain sexual gratification, a noncriminal intent, as appellant asserts. (*People* v. *Perez, supra*, at p. 552.)[7]

█ If an offense is committed as a means of committing another offense, it is generally held that the defendant had one criminal intent or objective or that his criminal intent or objective in regard to one of the offenses was incidental to his intent in committing the other offense. (*People* v. *Perez, supra*, at pp. 553-554; *People* v. *Beamon, supra*, 8 Cal.3d 625, 639; *People* v. *Massie* (1967) 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869].) However, section 654 is not applicable to a course of conduct *divisible in time*, although the course of conduct is directed toward one intent or objective. (*People* v. *Beamon, supra*, at p. 639.)

Even though the intent to commit one offense is not formulated until after the commission of another offense, Penal Code section 654 may preclude punishment for both offenses. (*In re Hayes, supra*, 70 Cal.2d 604, 610, fn. 9; *People* v. *Massie, supra*, 66 Cal.2d 899, 908; *In re Ward* (1966) 64 Cal.2d 672, 678 [51 Cal.Rptr. 272, 414 P.2d 400], cert. den. 385 U.S. 923 [17 L.Ed.2d 147, 87 S.Ct. 238].) In other words, the fact that one crime is completed before the other is commenced or is an afterthought does not *itself* make the criminal acts divisible. (*People* v. *Bauer, supra*, 1 Cal.3d 368, 376-377; *Burris* v. *Superior Court* (1974) 43 Cal.App.3d 530, 535 [117 Cal.Rptr. 898].) For example, if a defendant robs a victim and thereafter decides to steal his victim's car to make his getaway, he may not be punished for both auto theft and robbery. In this example the defendant's course of conduct will be deemed an indivisible transaction because the defendant's objective in stealing the car was to accomplish his objective of committing the robbery. (*People* v. *Bauer, supra*, at pp. 375-376; *People* v. *See* (1980) 109 Cal.App.3d 76, 80-81 [167 Cal.Rptr. 128]; *People* v. *Moore* (1970) 13 Cal.App.3d 424, 439 [91 Cal.Rptr. 538], cert. den. 404 U.S. 880 [30 L.Ed.2d 161, 92 S.Ct. 214]; but see *People* v. *McGahuey* (1981) 121 Cal.App.3d 524, 528-530 [175 Cal.Rptr. 479].) On the oth-

---

[7]However, it should be noted that section 654 would be applicable to a situation where a defendant is convicted of both rape and kidnaping, when the defendant's sole intent and objective in committing the kidnaping was to rape the victim, a criminal intent. (See *People* v. *Laster* (1971) 18 Cal.App.3d 381, 394 [96 Cal.Rptr. 108].) On the other hand, if a defendant is convicted of two sex offenses based upon separate sexual acts (i.e., rape and oral copulation), although not divisible in time, section 654 does not prohibit punishment for both sex crimes on the ground that the defendant's sole intent and objective in committing both offenses was to obtain sexual gratification. (*People* v. *Perez, supra*, 23 Cal.3d 545, 552.)

er hand, if a defendant robs a victim and decides to rape the victim after he has obtained the victim's property, he may be punished for both rape and robbery. (*In re Ward, supra,* at p. 678.) In this second example, the second offense was not committed as a means of committing the first offense, the second offense did not facilitate commission of the first offense and the second offense was not incidental to the commission of the first offense. (*People* v. *Perez, supra,* 23 Cal.3d 545, 553-554.)

■ At the time for resentencing defense counsel argued that the evidence clearly showed that the clear intent and objective of the kidnaping was to commit the sex crimes. The trial court necessarily made a factual determination that the sole objective of the kidnaping was not to commit rape and oral copulation, when it ruled that Penal Code section 654 did not preclude multiple punishment for the four offenses of which appellant was convicted. There is substantial evidence to support the trial court's implied finding. Appellant demanded money before sexually assaulting the victim. The trial court could have properly concluded that appellant decided to commit the sex crimes after he had kidnaped the victim. (See *People* v. *Lee, supra,* 110 Cal.App.3d 774, 786; *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 729 [156 Cal.Rptr. 94].) If the sex crimes were an afterthought, appellant's course of conduct will not be deemed an indivisible transaction, because the crimes committed as an afterthought did not facilitate the commission of the initial offense (kidnaping). (See *People* v. *Braun* (1973) 29 Cal.App.3d 949, 975 [106 Cal.Rptr. 56], cert. den. 414 U.S. 974 [38 L.Ed.2d 217, 94 S.Ct. 294]; disapproved on other grounds in *People* v. *Green* (1980) 27 Cal.3d 1, 25, fn. 10 [164 Cal.Rptr. 1, 609 P.2d 468].)

The trial court also could have properly concluded that appellant entertained multiple criminal objectives in embarking upon his course of conduct. The offenses occurred after Dillard had repeatedly rejected appellant. Not only did appellant kidnap the victim and commit the sex crime, but he demanded her money, assaulted her with a wet towel, ran the blade of a knife up and down the victim's body and forced her to drink Clorox and told her she was going to die. Appellant also inflicted other indignities upon Dillard during the six-hour period she was in his apartment (e.g., appellant had the victim urinate in a frying pan and then threw the pan at her; appellant placed pans of boiling water near Dillard's hips; and appellant photographed Dillard while he was placing objects in her vagina). If appellant could be said to have a sole or primary intent and objective in regard to his course of conduct, it would

appear to be to humiliate the victim. As noted above, the "intent or objective" test refers to a *criminal* intent or objective and such an amorphous noncriminal intent or objective (either to gain revenge or to humiliate) will not cause a course of conduct to be deemed an indivisible transaction. "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to insure that a defendant's punishment will be commensurate with his culpability." (*People* v. *Perez, supra,* 23 Cal.3d 545, 552.) It would reward the defendant who "thinks big" in planning a crime wave. (*Id.,* at p. 552.) Since it appears that in committing the kidnaping appellant had criminal objectives (of which he was not convicted) apart and/or in addition to the rape and oral copulation (for example, to assault Dillard by the use of various instruments, to rob her, to murder her and/or encourage her suicide by use of a poison) or that the sexual offenses were an afterthought, punishment for kidnaping as well as rape and oral copulation does not violate the prohibition against multiple punishment contained in Penal Code section 654. (*In re Cruz* (1966) 64 Cal.2d 178, 180-181 [49 Cal.Rptr. 289, 410 P.2d 825]; *People* v. *Hunter* (1971) 19 Cal.App.3d 336, 338 [97 Cal.Rptr. 29].)

The cases cited by appellant do not compel a contrary conclusion. In *People* v. *Laster, supra,* 18 Cal.App.3d 381, *People* v. *Panky* (1978) 82 Cal.App.3d 772 [147 Cal.Rptr. 341], and *People* v. *Green* (1979) 95 Cal.App.3d 991 [157 Cal.Rptr. 520], relied upon by appellant, there was no substantial evidence that the kidnapings had criminal objectives apart from the other offenses of which the defendants were convicted and/or punished.

■ We will now consider appellant's contention that imposition of a concurrent sentence for false imprisonment violated the prohibition against multiple punishment contained in Penal Code section 654. Concurrent sentences, as well as consecutive sentences, for crimes based on one act or an indivisible transaction constitute multiple punishment. (*People* v. *Murphy, supra,* 111 Cal.App.3d 207, 213; *People* v. *Lee, supra,* 110 Cal.App.3d 774, 785.) There can be no question that the primary criminal objective of appellant in committing the kidnaping was to commit the crime of false imprisonment. (See *People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal.Rptr. 242]; see also *People* v. *Bauer, supra,* 1 Cal.3d 368, 375.) In fact, false imprisonment is necessarily included in the offense of kidnaping. (*People* v. *Apo, supra,* at

p. 796.) If both the false imprisonment count and kidnaping count relate to the same act, double conviction as well as double punishment is prohibited. (*People* v. *Bauer, supra*, at p. 375; *People* v. *Greer* (1947) 30 Cal.2d 589, 597-604 [184 P.2d 512]; *People* v. *Greene* (1973) 34 Cal.App.3d 622, 654 [110 Cal.Rptr. 160].)

The case of *People* v. *Pater* (1968) 267 Cal.App.2d 921 [73 Cal.Rptr. 823], is very helpful in determining when two counts relate to the same act. In *Pater*, defendant was convicted of grand theft (auto) (Pen. Code, § 487, subd. 3) and of taking or driving a vehicle without the owner's consent (Veh. Code, § 10851). (*Id.*, at p. 922.) The accusatory pleading in *Pater* alleged that the grand theft occurred on June 8, 1967, while the violation of Vehicle Code section 10851 was alleged to have occurred on June 12, 1967, when the defendant was apprehended. The court in *Pater* in holding that the Vehicle Code violation was a necessarily included offense of grand theft and which related to the same act stated: "The allegation (in count 2) that the Vehicle Code violation occurred four days after the violation of the Penal Code section did not, however, set forth a second, separate, divisible crime. The allegations of both counts relate simply to the proof relied upon to sustain a conviction for either offense. The charge in count 2 is duplicatory of the offense necessarily and impliedly charged in count 1. It is a manifestation of the continuous character of the offense. This wilful, wrongful taking and possession continued until interrupted four days later when defendant was caught. [¶] There was just one continuous, indivisible, inseverable act or course of conduct which, as we see it, would have retained its indivisible status so long as defendant retained the original dominion over the property obtained by the original theft. Neither clocks, calendars nor county boundaries convert one continuing course of conduct into a series of criminal acts. He who steals an automobile, steals it for use—whether that use be personal, for resale, gift, consumption, abandonment or some other form of ultimate disposal. [¶] Thus, the act charged under count 2 was a lesser included offense under count 1. It need not have been pleaded as a separate count, and it cannot be transformed into a separate severable offense by doing so." (*Id.*, at pp. 926-927.)

The reasoning in *Pater* is applicable to the convictions of kidnaping and false imprisonment in the instant case. The fact that there is a continuous character to the offense of false imprisonment does not change the fact that false imprisonment is necessarily included in the offense of kidnaping and that both the false imprisonment count and the kidnap-

ing count relate to the same act or acts. He who kidnaps a victim does so in order to restrain the personal liberty of his victim (Pen. Code, § 236), whatever his purpose may be for the false imprisonment (to rape, to rob, to obtain ransom, etc.).

Accordingly, the conviction of false imprisonment must be reversed.

### Dual Use of Facts in Sentencing

■ Appellant was sentenced to the upper term on the rape count and the sentences on the kidnaping and oral copulation counts were to run consecutively to the rape count. Appellant contends that the trial court erroneously used the same facts to justify the aggravated term on the rape count and to justify the consecutive sentences on the kidnaping and oral copulation counts.

In *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 751, [165 Cal.Rptr. 764], the court noted that Penal Code section 1170, subdivision (b), provided before it was amended in 1978[8] in pertinent part: "'The court may not impose an upper term by using the same fact used to enhance the sentence under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7 ....'" Penal Code section 1170.1 includes provisions which pertain to the imposition of consecutive terms and the calculation of their length. Accordingly, the court concluded in *Lawson* that a trial court could not use the same fact for imposing the aggravated term and imposing consecutive sentences. (*Id.*, at p. 757.)

The People recognize that the same facts may not be used to impose the aggravated term and also used to impose consecutive sentences. However, the People assert that the trial court's comments may be interpreted in such a way as to show that it was not using the same facts twice.

A review of the court's statement of reasons for imposing the aggravated term and for imposing the consecutive sentences, leads to only one reasonable interpretation—that the court improperly relied upon the same facts for imposing the aggravated term and for imposing consecutive sentences.

---

[8]In 1978 Penal Code section 1170, subdivision (b), was amended to read in pertinent part: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under Section 667.5, 1170.1, 12022, 12022.5, 12022.6, or 12022.7." This amendment applies prospectively to crimes committed on or after January 1, 1979. (*People* v. *Lawson, supra*, at p. 751, fn. 3.) In the instant case we are concerned with crimes that were committed before January 1, 1979.

The trial court found the following aggravating factors justify the imposition of the upper term on the rape count: "So clearly, Item One under Rule 421 is applicable here, and I find that to be a circumstance in aggravation. The crime involved great violence, great bodily harm, and threat of great bodily harm, with other acts disclosing a high degree of cruelty, viciousness, and callousness.

"Likewise, I find Item A(2) under Rule 421 is a serious circumstance in aggravation, being armed and using a weapon during that day of the 18th of April—correction, 18th of August of 1977. I find, too, that the victim was a particularly vulnerable victim and Item Seven would be applicable, A(7) if one—one or more of the crimes with which Mr. Ratcliffe has been convicted is being sentenced concurrently."

The only mitigating factor the court thought might be applicable was that appellant's prior criminal record was "insignificant." The court then stated: "However, I find that that is outweighed considerably by circumstances in aggravation, and those circumstances in aggravation preponderate."

The court stated its reasons for imposing consecutive sentences on the kidnaping and oral copulation convictions as follows: "Now, in studying 425, the criteria effecting concurrent and consecutive sentences, again the Court does not believe that necessarily these subsections are of equal importance. The crimes involved here did involve separate acts of violence or threats of violence, no question about that. Also, the Court *may consider any circumstances in aggravation or mitigation, but I have already considered and explained my feelings on those.*" (Italics added.)[9]

Since it is clear that the trial court made dual use of the same factors in imposing the aggravated term and imposing consecutive sentences, appellant is entitled to a new sentencing hearing. (*People* v. *Burney* (1981) 115 Cal.App.3d 497, 504-506 [171 Cal.Rptr. 329]; *People* v. *Covino* (1980) 100 Cal.App.3d 660, 670-671 [161 Cal.Rptr. 155].)

### Probation Report

■ Appellant points out the probation report refers to his prior arrests that did not result in convictions. Appellant's final contention is the inclusion in the probation report of his prior police contacts that did not result in convictions, denied him due process of law. Appellant relies

[9]The only time the court considered "any circumstances in aggravation or mitigation" was in determining whether to impose the upper term for the rape count.

upon *People* v. *Calloway* (1974) 37 Cal.App.3d 905 [112 Cal.Rptr. 745], to support his contention.

The defendant in *Calloway* complained that the trial court denied his application for probation and committed him to the California Youth Authority on the basis of a probation report listing various prior contacts with law enforcement agencies and courts, including four matters on which the disposition was listed as "'unknown'" and seven contacts (under the headings of grand theft, burglary and assault with a deadly weapon) bearing the notation "'Not arrested, 849b(1) P.C.'" (*People* v. *Calloway, supra,* at p. 907.) Penal Code section 849, subdivision (b)(1), provides for the release from custody of a person arrested without a warrant when there are insufficient grounds for making a criminal complaint against the person. The court in *Calloway* stated: "Such records, *without supporting factual information,* should not be included in a probation report. They are unreliable, highly prejudicial, and under many circumstances could result in a fundamentally unfair hearing." (*Id.,* at p. 908, italics added.) However, the court in *Calloway* found no deprivation of due process because the trial court had not relied upon the impermissible factors in committing the defendant to the California Youth Authority. (*Id.,* at p. 909; see *People* v. *Romero* (1977) 68 Cal. App.3d 543, 550 [137 Cal.Rptr. 675].)

It is now well established that a probation report may refer to an arrest that did not result in a conviction, if supporting factual information is included and the information is not presented in a misleading manner. (*People* v. *Lutz* (1980) 109 Cal.App.3d 489, 497 [167 Cal.Rptr. 309]; *People* v. *Tobia* (1979) 98 Cal.App.3d 157, 165 [159 Cal.Rptr. 376]; *People* v. *Taylor* (1979) 92 Cal.App.3d 831, 833 [155 Cal.Rptr. 62].)

Appellant's probation report in the instant case does not contain the kind of bare "rap sheet" information condemned in *Calloway,* but rather contains lengthy supporting factual information (e.g., victim's statement, statement of appellant in regard to prior arrests, police reports, disposition). The report was on the whole adequate and not misleading. Furthermore, the trial court stated the only thing it was considering in regard to appellant's criminal record, was appellant's conviction for a Health and Safety Code violation. In fact, the trial court thought appellant's "insignificant" criminal record could be considered a mitigating factor.

Accordingly, appellant's final contention is without merit.

The conviction of a violation of Penal Code sections 236-237 (false imprisonment) is reversed and the trial court is directed to dismiss the charge. The remaining convictions are affirmed but the sentence imposed is vacated and the cause is remanded for resentencing consistent with the views expressed in this opinion.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied November 20, 1981, and on November 9, 1981, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 23, 1981.