[Crim. No. 35918. Second Dist., Div. One. Jan. 28, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID CORTEZ, Defendant and Appellant.

**COUNSEL**

Paul Arthur Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Robert F. Katz and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HOGAN, J.*—David Cortez appeals from the judgment (order granting probation) entered following a jury trial that resulted in his convictions of violations of Penal Code section 288a, subdivision (e); Penal Code section 288a, subdivision (d); and Penal Code section 288a, subdivision (c).

On December 21, 1978, appellant, along with the codefendants Anaya, George and Harper, were charged with an act of oral copulation while confined in the Ventura County jail in violation of Penal Code section 288a, subdivision (e). It was further alleged that appellant had been previously convicted of felonies on two occasions. By way of first amended information, filed on February 13, 1979, appellant, along with the aforesaid codefendants, was charged in *count I* of participating in an act of oral copulation with Mark Cornelson while confined in a county jail in violation of Penal Code section 288a, subdivision (e). In *count II*, appellant and the codefendants were charged with acting in concert in performing an act of oral copulation by force or violence and against the will of Mark Cornelson, in violation of Penal Code section 288a, subdivision (d). In *count III*, appellant, along with the codefendants, was charged with participating in a forcible act of oral copulation with Mark Cornelson in violation of Penal Code section 288a, subdivision (c). Appellant entered a not guilty plea to the charges contained in the first amended information. Outside the presence of the jury appellant admitted the allegations of the prior felony convictions. The matter proceeded to trial as to appellant, George and Harper. The jury returned guilty verdicts against all defendants, including the appellant, on all three counts. Appellant's oral motion to modify the verdict as to count II was denied. Appellant was committed to the Department of Corrections for the purpose of conducting a diagnostic study in accordance with the provisions of section 1203.03 of the Penal Code. Appellant's request for probation was granted. The court suspended the imposition of sentence and placed appellant on probation for a period of 36 months on various terms and conditions including that appellant

---

*Assigned by the Chairperson of the Judicial Council.

serve the first year in county jail with credit for 273 days served in pre-sentence custody. Cortez takes this appeal from the judgment (order granting probation).[1]

CONTENTIONS ON APPEAL

Appellant raises the following assertions of error in the trial below.

(1) The trial court erroneously instructed the jury on the rules relating to accomplice.

(2) Penal Code section 288a, subdivision (e) is unconstitutional.

(3) That appellant's conviction on counts II and III constituted improper multiple conviction.

FACTS

The testimony and evidence presented during the trial related to several acts of oral copulation occurring in the Ventura County jail at the Oxnard branch, on November 3, 1978. The two principal prosecution witnesses were Mark Cornelson (hereinafter referred to as Cornelson) and Robert Burkhart (hereinafter referred to as Burkhart). Both Cornelson and Burkhart were inmates at the county jail at the time when the acts were alleged to have occurred.

Cornelson testified that on November 3, 1978, he was an inmate at the jail and observed a fight between Burkhart and codefendant Harper. The codefendant Jerry George was present at the fight but did not participate. Shortly after the fight concluded, George told Cornelson that if he wanted to stay in the tank, that Cornelson would have to take care of him. Cornelson replied that he would take care of George. Cornelson was then told by George to go around the corner of the tank, to an area which would not be in the view of deputies who were responsible for supervising the conduct of the inmates. When Cornelson asked why he had to go around the corner, George said that Cornelson was going to have to commit an act of oral copulation or sodomy. Cornelson stated that he did not want to do so. George indicated that Cornelson could be forced to do that. Codefendant Harper then grabbed Cornelson and a mattress, and Cornelson went around a corner. Harper sat on

---

[1]Defendant Cortez is the only appellant involved herein.

the mattress with his back to the wall. Cornelson was then forced to perform oral copulation on Harper. Cornelson did not resist, did not yell for help, or attempt to fight back in any way. Cornelson said he was frightened because of the fight that he had observed earlier in the day involving Burkhart. He feared he would be beaten as Burkhart had been.

A short time later, about 20 minutes, George sat down on the mattress in the same position as that of Harper, and Cornelson was forced to orally copulate George. Again Cornelson did not resist. Cornelson was afraid of what would happen to him if he became a "snitch."

Later that same evening Cornelson said he was told to trade places with another inmate and spend the night in cell No. 1. Cornelson said he was told to do this by codefendant Anaya and appellant. Cornelson knew that he would have to perform oral copulation when he went into cell No. 1. Cell No. 1 was occupied by appellant, Harper and Anaya. After getting to cell No. 1, Cornelson said he got into a top bunk. Cornelson said that appellant and Harper then pulled him off his top bunk, and Cornelson was forced to orally copulate appellant. Both Harper and Anaya were sitting at another bunk watching this incident. After the incident with appellant was concluded, Cornelson said that Harper began pulling on his coveralls, to which Cornelson objected. He asked Harper to let go. Harper then swung a fist at Cornelson, whereupon Cornelson orally copulated Harper. Eventually Cornelson returned to his own cell. Cornelson said he did not report these incidents until November 5, 1978, and only after Burkhart had suggested that he do so. Burkhart had sent a note to Cornelson, inquiring if he was going to prosecute, and indicated that he (Burkhart) would be willing to be a witness.

At trial, on cross-examination, Cornelson admitted that he was moved out of the area where the incident occurred after complaining to the sheriff deputies; that he further admitted he wanted to be a trustee and shortly thereafter did become one. He also admitted that he was given immunity from prosecution and that prior to Burkhart's offer to be a witness, admitted that he would not have told anybody about the incident. At the time of trial, Cornelson and Burkhart admittedly were cellmates.

Burkhart was the second key prosecution witness. He testified to the events leading up to the fight with appellant. The fight started over a remark made by Burkhart about appellant. When Burkhart admitted

making the remark about appellant Burkhart stated that appellant said "Well, I guess we are going to have to get it straight between us." Burkhart stated that appellant was trying to provoke a fight. Other inmates told Burkhart he ought to fight or that he would be a "punk." The term "punk" referred to, in jailhouse slang, meant "A weak individual or a homosexual, as far as female role." The fight between Burkhart and appellant then took place. About six inmates joined in against Burkhart, including codefendants Anaya and Harper. Burkhart wasn't sure who hit or kicked him, but it was from this group of six other inmates. Harper did swing at him several times, but apparently missed. Burkhart was forced to the floor, where he was kicked and hit. Part of his hair had been pulled out by appellant. He recalled bleeding on his legs, and injury to his back, legs and head. Burkhart described what happened to him as a "beating." Burkhart recalled Cornelson being present during this fight.

A little later, Burkhart said he saw Harper and George approach Cornelson and began talking to him. Cornelson began to cry. Burkhart observed Cornelson orally copulate Harper. Burkhart also observed the oral copulation between George and Cornelson. He later heard appellant and codefendant Anaya state that they would get "theirs" in their cell. Burkhart admitted on cross-examination that his present cellmate (at trial) was Cornelson; further admitted that he previously had been convicted of a felony of receiving stolen property.

The prosecution called several deputy sheriffs who testified as to the relationships between the inmates at the Oxnard branch of the Ventura County jail. Deputy Riley testified that on November 3, 1978, he saw the codefendants Harper and George in the area described by Cornelson as the place where the act of oral copulation occurred. He saw Harper rising up from the mattress that was in the corner. Harper was nude to the waist. Riley also testified that on November 5, 1978, he saw several abrasions on the witness Burkhart. Deputy Dunlap testified as to the conditions at the jail. On November 5, 1978, Dunlap noted that Cornelson did not go to the noon or evening meals and appeared to be reluctant to talk. He further said there were microphones throughout the area where the acts of oral copulation had allegedly occurred.

The defense produced several inmates in the Ventura County jail, concerning statements made by Cornelson. Manuel Perez said he had a conversation with Cornelson on November 15, 1978, and Cornelson told

him that he had fabricated the story about oral copulation in an effort to get out of the tank at the Oxnard branch. Albert Villa heard Cornelson talking to another inmate. Cornelson stated that he wanted to get out of the tank and that he therefore fabricated the story about the alleged acts of forcible oral copulation. Another inmate, Adrian Yates, also heard Cornelson admit that he had made up the story concerning the act of oral copulation. Another inmate, Ralph Mansell, testified that Cornelson said he had made up the story in order to get out of the jail. Finally, codefendant George testified. He denied he had ever been involved in the act of oral copulation with Cornelson. He also testified that he had tatooed on his penis the words, "your name." Appellant did not testify in his own defense, nor did Harper or Anaya.

In rebuttal, the prosecutor called Investigator Henry of the Ventura County District Attorney's office. Mr. Henry had some conversations with some of the defense inmate witnesses. Henry stated that Perez admitted that he had been confused after his interview with a defense investigator. Perez also told Henry that he had not heard anything to indicate that Cornelson had fabricated the story about oral copulation. Henry also interviewed Adrian Yates, who stated that he was afraid of codefendant George. At a separate interview, Yates refused to answer any questions claiming that he had been told not to do so by codefendant George. Cornelson was called as a rebuttal witness. He testified he had seen the words "your name" tatooed on codefendant George's penis, but could not explain why he had not remembered this when first called as a witness by the prosecutor.

DISCUSSION

DID THE TRIAL COURT ERRONEOUSLY INSTRUCT THE
JURY ON THE RULES RELATING TO ACCOMPLICES?

The trial court gave the following standard instructions relating to accomplices. CALJIC No. 3.10, defining accomplice; CALJIC No. 3.11, testimony of an accomplice must be corroborated; CALJIC No. 3.12, what evidence is sufficient to corroborate accomplice; CALJIC No. 3.13, the inability of accomplices to corroborate each other's testimony.

The trial court also gave CALJIC No. 3.18, that testimony of an accomplice ought to be viewed with distrust. The trial court also gave a

modified version of CALJIC No. 3.19[2] advising the jury that as to count I of the amended information they would have to determine whether or not Mark Cornelson was an accomplice as defined by the court. Further, in this modified version of CALJIC No. 3.19, the trial court instructed that, as a matter of law, Mark Cornelson was not an accomplice with respect to counts II and III.

Appellant claims error in the giving of CALJIC No. 3.18. Appellant contends that the testimony of George contradicted that of Cornelson and Burkhart, as to whether any act of oral copulation ever took place; that George's testimony was helpful to the appellant, and it was error to instruct that the testimony of an accomplice must be viewed with distrust, because he was a defense witness.

First, the court did not instruct the jury that George was an accomplice; the jury was instructed on how to determine whether or not a person is an accomplice, leaving it to the jury to make that factual determination. Second, appellant did not call George as his witness nor did George testify for appellant. George took the stand and testified in his own defense. As to George, CALJIC No. 3.18 was irrelevant, for it was on his own testimony that an acquittal could be returned. The jury obviously chose not to believe George. We note from the record that during the examination of George, the trial court allowed three prior felony convictions suffered by George into evidence for impeachment purposes. The jury was given CALJIC No. 2.23, instructions on the credibility of a witness and conviction of a felony. These three prior fel-

---

[2]CALJIC No. 3.19 provides: "As to Count I of the Information, participating in an act of oral copulation while confined in the Ventura County Jail, you must determine whether or not the witness, MARK CORNELSON, was an accomplice as I have defined that term.

"As to Count I of the Information, participating in an act of oral copulation while confined in the Ventura County Jail, the defendant has the burden of proving by a preponderance of the evidence that MARK CORNELSON was an accomplice in that crime.

"Preponderance of the evidence means such evidence as when weighed with that opposed to it has more convincing force and the greater probability of truth.

"In the event that the defendant has not proved by a preponderance of the evidence that MARK CORNELSON is an accomplice or the evidence is evenly balanced so that you are unable to say that the evidence on either side of the issue preponderates, then you must find that MARK CORNELSON was not an accomplice with respect to Count I of the Information, participating in an act of oral copulation while confined in the Ventura County Jail.

"The witness MARK CORNELSON, as a matter of law, is not an accomplice with respect to Count II, 288a(d) of the Penal Code, and Count III, 288a(e) of the Penal Code."

ony convictions were undoubtedly taken into consideration by the jury in weighing and evaluating George's testimony.

█ Where an accomplice is called as a witness by the prosecution, CALJIC No. 3.18 must be given *sua sponte*. (*People* v. *Terry* (1970) 2 Cal.3d 362, 399 [85 Cal.Rptr. 409, 466 P.2d 961]; *People* v. *Miller* (1960) 185 Cal.App.2d 59, 82-83 [8 Cal.Rptr. 91].) If an accomplice is called as a witness by the defendant, CALJIC No. 3.18 should not be given unless requested by defendant. (*People* v. *Miller, supra.*) If both parties call an accomplice, this instruction must be restricted to prosecution witnesses only. (*People* v. *Watson* (1952) 113 Cal.App.2d 799, 803 [249 P.2d 38].)

█ While we find that George was not an accomplice witness for appellant, and the giving of the accomplice instructions was proper, appellant urges that George did testify for the defense, that the jury undoubtedly concluded he was an accomplice as well as a participant, and therefore under the rule promulgated by *People* v. *Watson, supra*, 113 Cal.App.2d 799; that CALJIC No. 3.18 had to be restricted to prosecution witnesses only. We believe that even under this argument the trial court did adequately instruct within the holding in *People* v. *Watson, supra.*

The court instructed the jury that as a matter of law Cornelson could not be an accomplice as to counts II or III. There is no challenge to this. █ Therefore, the alleged error can only be directed towards count I. Cornelson was the only prosecution witness that the jury could find to be an accomplice. He was the one who participated in the alleged acts, and was the chief complaining witness for the prosecution. The trial court specifically instructed the jury that as to count I they would have to determine if Mark Cornelson was an accomplice. Since Cornelson was called as a prosecution witness, we believe the instructions (CALJIC No. 3.18 in conjunction with CALJIC No. 3.19 as mod.) was adequate and within the holding in *People* v. *Watson, supra.*

Whether Cornelson was an accomplice as to count I depended on whether he was induced to participate in that offense by threats and fear of bodily harm, a question of fact to be decided by the jury. Inasmuch as a conviction may not be had on the uncorroborated testimony of an accomplice (Pen. Code, § 1111), whether or not Cornelson was an accomplice was an issue which had to be resolved by the jury. The prosecution relied heavily on Cornelson's testimony, and if the prosecution

had not requested the accomplice instructions, the court would have had to give them *sua sponte.*

We are not unmindful that the courts of this state have held it to be error to instruct the jury that the testimony of an accomplice should be viewed with distrust where the accomplice testifies *for* the defendant. (*People v. O'Brien* (1892) 96 Cal. 171, 180-181 [31 P. 45]; *People v. Hartung* (1950) 101 Cal.App.2d 292, 295 [225 P.2d 614]; and *People v. Gonzales* (1970) 4 Cal.App.3d 593, 607 [84 Cal.Rptr. 863].) As noted herein, George was not called as a witness for the appellant.

These cases are not controlling. Here, the prosecution called Cornelson, and the jury under the court's instructions had to determine if he was an accomplice. Appellant did not testify nor were any witnesses called on his behalf. Appellant did not call George as a witness. If George had not testified in his own behalf, and Cornelson being a prosecution witness, most certainly appellant would be urging error if the accomplice instructions were not given by the trial court. Under all the circumstances we do not believe appellant has any just cause to complain.

If appellant believed that CALJIC No. 3.18 and CALJIC No. 3.19, which were requested by the People, were not adequate, or needed more clarification, as to restricting their use, as required by *People v. Watson, supra,* appellant should have objected, or made known his views to the trial court. From appellant's failure to object, or make known his views to the trial court, or to request other instructions on this point, we can only conclude that CALJIC No. 3.18 and CALJIC No. 3.19 (mod.) as given, was acceptable to him. (*People v. Flanders* (1979) 89 Cal.App.3d 634, 640 [152 Cal.Rptr. 696]; *People v. Miller, supra,* 185 Cal.App.2d 59, 83-84.)

 Even assuming that it was error to give these challenged instructions, we must examine the entire record to determine whether such error constituted prejudicial error requiring a reversal of the judgment of conviction. (*People v. Warren* (1940) 16 Cal.2d 103, 119 [104 P.2d 1024]. From the nature of the instructions and the tenor of the evidence, it is not reasonably probable that a result more favorable to defendant would have been reached, even had the challenged instructions not been given. (See *People v. Watson, supra,* 46 Cal.2d 818, 837; *People v. Graham* (1978) 83 Cal.App.3d 736, 745 [149 Cal.Rptr. 6].)

We conclude the trial court did not err in instructing the jury on the rules relating to accomplices.

## Is Penal Code Section 288a, Subdivision (e) Constitutional?

■ Appellant challenges the constitutionality of Penal Code section 288a, subdivision (e) on several grounds. He asserts that it violates the right of privacy and the equal protection provisions of the state and federal Constitutions.

Appellant acknowledges that the constitutionality of Penal Code section 288a, subdivision (e) has recently been upheld in *People* v. *Santibanez* (1979) 91 Cal.App.3d 287 [154 Cal.Rptr. 74], but argues that this court should not follow that precedent inasmuch as the decision was reached by the Fifth District Court of Appeal.

For the reasons set forth in *People* v. *Santibanez, supra,* we hold that Penal Code section 288a, subdivision (e) is constitutional.

■ Appellant further argues that it is unconstitutional on the basis that it prohibits even consenting acts of oral copulation occurring during family visiting procedures at state penitentiaries. As pointed out by the People, in their responding brief, appellant did not seek to defend against the charge under subdivision (e) of Penal Code section 288a by proving that a consensual act of oral copulation had occurred. As we view the record, the act constituting a violation of that subdivision of that statute, if it occurred at all, was compelled by force or threats of bodily harm. Accordingly, appellant has no standing to attack the constitutionality of section 288a, subdivision (e) as it applies to consenting adults. (*People* v. *Reeder* (1976) 65 Cal.App.3d 235, 243, fn. 1 [135 Cal.Rptr. 421]; *People* v. *Parker* (1973) 33 Cal.App.3d 842, 848-850 [109 Cal.Rptr. 834].)

## Did Appellant's Conviction on Both Counts II And III Amount to Improper Multiple Convictions?

Appellant contends that he could not properly be convicted on both counts II and III.

In count II of the first amended information, appellant, along with the other codefendants, was accused of the crime of violation of section

288a, subdivision (d) of the Penal Code, in that on or about November 3, 1978, in Ventura County, California, they, while voluntarily *acting in concert with another person* personally committed and aided and abetted an act of oral copulation by force or violence and against the will of Mark Cornelson.

In count III, appellant, along with the codefendants, was accused of the crime of violation of section 288a, subdivision (c) of the Penal Code, in that on or about November 3, 1978, in Ventura County, California, they participated in an act of oral copulation with Mark Cornelson whose participation was compelled by force, violence, duress, menace, or threat of great bodily harm.

It is readily apparent that the charge in count II carries the additional element of "acting in concert with another person."

■ Appellant asserts "Any person who forces another person to engage in an act of oral copulation by force or violence and against the will of the victim ..." (Pen. Code, § 288a, subd. (d)) has certainly also "compelled the participation of another person in an act of oral copulation by force, violence, duress, menace, or threat of great bodily harm ...." Any person who is subject to an act of oral copulation "by force or violence" has certainly been subject to "duress, menace, or threat of great bodily harm...." as defined by Penal Code section 288a, subdivision (c). Therefore, any time a person violates those provisions of subdivision (c) relating to compelling a victim to engage in an act of oral copulation "by force, violence, duress, menace, or threat of great bodily harm ...." then the provisions of subdivision (d) have likewise been violated. Therefore, subdivision (c) is a lesser and necessarily included offense of subdivision (d).

We disagree. To be a lesser included offense, all the elements of the lesser offense must be included within the elements of the greater offense. (*People* v. *Francis* (1969) 71 Cal.2d 66, 72-74 [75 Cal.Rptr. 199, 450 P.2d 591].) As stated in *People* v. *Jarrett* (1970) 6 Cal.App.3d 737, 740 [86 Cal.Rptr. 15], "'The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense. [Citations.]'"

If appellant did not "act in concert with another person" in compelling Cornelson to engage in an act of oral copulation "by force,

violence, duress, menace, or threat of great bodily harm; then there has been no violation of subdivision (d). Conversely, a violation of subdivision (d) cannot be a necessarily included offense within subdivision (c).

Appellant correctly cites the well established rule that when a defendant is convicted of both the greater and the lesser offense that he is entitled to a reversal of the conviction as to the lesser offense. (*People v. Pater* (1968) 267 Cal.App.2d 921, 926 [73 Cal.Rptr. 823].) If count III were a necessarily included offense within count II, his contentions would have merit.

However, in this case appellant's convictions were based on at least four separate acts of oral copulation committed against the victim by appellant and his codefendants. Further, appellant was found guilty as a principal in each of these four acts either as the actual perpetrator or as an aider and abettor.

We find that his convictions on counts II and III were proper, since they resulted from two separate acts comprising two distinct offenses. (*People v. Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63].)

The proscription against multiple conviction for both a greater and lesser included offense applies only where both offenses are based upon a single act. (*People v. Pater, supra*, 267 Cal.App.2d 921, 925.) Since the charges contained in counts II and III refer to separate acts, appellant's conviction on both counts was proper. (*People v. Perez, supra*, 23 Cal.3d 545.)

The judgment (order granting probation) is affirmed.

Spencer, P. J., and Lillie, J., concurred.