Filed 8/30/24  P. v. Brown CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B327531 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA106418) |
| v. | |
| BELLAGIO BROWN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Altus W. Hudson, Judge.  Affirmed.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield, Stefanie Yee and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Bellagio Brown arrived uninvited at his former girlfriend's apartment and sexually assaulted her. He was convicted of multiple offenses, including assault with the intent to commit rape, sexual penetration, sodomy or oral copulation, and sentenced to four years in prison. He contends the court prejudicially abused its discretion in refusing to grant a continuance of trial and in excluding his proffered impeachment evidence regarding the victim. He further contends that his conviction on count 6 for assault with intent to commit rape must be vacated because the jury acquitted him of assault to commit rape as a lesser included offense to count 1 and found him guilty of assault with intent to commit sexual penetration as a lesser included offense to count 2.

We reject all of defendant's contentions and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant met D.S. at Santa Monica College in 2017. They dated for several years and had two sons together—one born in 2018 and the other in 2020. In 2021, D.S. broke up with defendant, finding him abusive, and moved into her own apartment with her two sons. D.S. maintained contact with defendant via text and FaceTime calls so that he could have a relationship with his sons, but she did not allow defendant at her home and otherwise did not see him in person.

On the afternoon of July 28, 2022, D.S. was getting ready for work and awaiting her mother's arrival to babysit the boys while she was at work. When the doorbell rang, D.S. was on her cellphone and did not bother looking to see who it was before opening the door, believing it was her mother. However, she was shocked to see that it was defendant. Defendant immediately stepped inside, kissed D.S. on the mouth and hugged her. He then

2

started pushing her toward the couch, saying they needed to talk. D.S. told him repeatedly he needed to go, or words to that effect.

On the couch, defendant began groping D.S., pulling her top up and putting his mouth on both of her breasts. At some point, D.S. was able to get up and head toward the kitchen. She sent texts to both her mother and her neighbor asking them for help and to call 911. D.S. did not feel comfortable trying to call 911 in front of defendant. Defendant became angry, and "forcefully" pushed D.S. into the kitchen and up against the sink. He snatched her phone from her and placed it on top of the refrigerator, out of her reach.

Defendant pressed up against D.S. from behind (D.S. was facing the counter). He pulled her pants and underwear down and attempted to place his penis and his fingers in her vagina. She felt both against her bare skin. At some point, defendant also placed his mouth on both sides of her buttocks. D.S. was eventually able to grab a pan and swing it at defendant. She yelled at him to get out. When D.S.'s mother arrived, defendant pushed past her and fled the apartment. D.S. then called 911.

After the police arrived and talked to D.S., she was taken to the hospital for a SART (Sexual Assault Response Team) examination. The examination included the collection of samples from D.S.'s mouth, left breast and right and left buttocks. Testing performed on those samples showed that the male DNA collected matched defendant's DNA profile. Samples collected from D.S.'s vaginal area were negative for male DNA.

According to defendant, he went to D.S.'s apartment that day to visit with his sons which was something he did on a "regular" basis. When he arrived, he and D.S. were being "romantic," sitting on the couch and consensually kissing each other. At some point, they went to the kitchen and defendant tried to "escalate" the situation by "kissing on her, like neck and breast and stuff like

3

that." Defendant also kissed D.S. on her bare buttocks. When he did so, D.S. started screaming at him. She grabbed a knife and began waving it at him. Defendant said D.S. had a new boyfriend and she was being "manipulative," wanting him there only on her terms. He said she was trying to frame him. Defendant denied grabbing D.S.'s phone and said he did not take off his own clothes and did not touch her vagina.

Defendant was charged with forcible rape (Pen. Code, § 261, subd. (a)(2); count 1), sexual penetration by use of force (§ 289, subd. (a)(1)(A); count 2), dissuading a witness (§ 136.1, subd. (c)(1); count 3), sexual battery by restraint (§ 243.4, subd. (a); count 4) and assault with intent to commit rape, sexual penetration, sodomy or oral copulation (§ 220, subd. (a)(1); count 6). The court dismissed count 5 (stalking) at the preliminary hearing.

In December 2022, the case proceeded to a jury trial. Before the start of voir dire and again, several days later, while voir dire was underway, defense counsel requested a trial continuance to consult a DNA expert. Defendant refused to waive time and counsel requested the court grant the request over defendant's objection. The court denied the requests. The court also denied defendant's motion to introduce evidence of prior acts by D.S. as impeachment. We reserve a more detailed discussion of these rulings to parts 1 and 2 of the Discussion below.

On count 1, the jury found defendant not guilty of forcible rape and guilty of the lesser included charges of misdemeanor battery (Pen. Code, § 242) and misdemeanor assault (§ 240). On count 2, the jury found defendant not guilty of sexual penetration by force and guilty of the lesser included charges of attempted forcible sexual penetration (§§ 289, subd. (a)(1), 664), sexual battery (§ 243.4, subd. (a)), misdemeanor battery (§ 242), misdemeanor assault (§ 240), and assault with intent to commit forcible sexual

4

penetration (§ 220, subd. (a)(1)). The jury acquitted defendant of dissuasion of a witness as charged in count 3. The jury found defendant guilty as charged in counts 4 and 6, sexual battery by restraint (§ 243.4, subd. (a)) and assault with intent to commit rape, sexual penetration, sodomy or oral copulation (§ 220, subd. (a)(1)).

The court sentenced defendant to a four-year midterm on count 6 and stayed sentence on the remaining counts pursuant to Penal Code section 654. Defendant was awarded 233 days (202 actual, 31 conduct) of presentence custody credits.

This appeal followed.

## DISCUSSION

### 1. Denial of Trial Continuance

#### a. Background

On December 2, 2022, the parties answered ready and were sent to a trial department. The parties trailed until Friday, December 9, 2022. That same day, before the court brought in the panel of prospective jurors, the prosecutor reported that the DNA testing of the samples collected during the victim's SART examination in July was still ongoing. She said that the DNA report was expected within a week and asked the court for the right to amend her witness list once the report was received because she would not know which technician to call until then. Defendant objected to the addition of any additional witnesses regarding DNA evidence and testing. The court deferred its ruling.

The following Thursday, December 15, 2022, while voir dire was underway, the prosecutor told the court she had received an e-mail that morning that the report of the DNA testing was complete and she had forwarded the report to defense counsel. The prosecutor said she intended to introduce the report and wanted to call senior criminalist, Learden Matthies, to testify about the DNA testing and results. Defense counsel objected on the grounds it was

5

late discovery and receipt of the evidence would deny defendant a fair trial because he would not have the opportunity to consult with a DNA expert.  The prosecutor responded that it was not late discovery, that everyone knew the testing was pending and defendant chose not to waive time or consult with an expert.

The court said it would consider a brief continuance if defendant was willing to waive time.  Defense counsel advised the court that defendant was continuing to assert his statutory right to a speedy trial and was unwilling to waive it.  Counsel requested that the court grant the request for a continuance over defendant's objection because it was for his own benefit to have the services of a DNA expert.  The court denied the motion.

### b.    Analysis

In reviewing a denial of a motion to continue trial, we consider "the circumstances of each case and the reasons presented for the request to determine whether [the] trial court's denial of a continuance was so arbitrary as to deny due process.  [Citation.] Absent a showing of *an abuse of discretion and prejudice*, the trial court's denial does not warrant reversal." (*People v. Doolin* (2009) 45 Cal.4th 390, 450, italics added (*Doolin*).)  " 'The party challenging a ruling on a continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked.' " (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 812.)  Defendant has not established that an abuse of discretion occurred here, nor has he shown prejudice.

Defendant's request to continue trial was made after the parties had answered ready and were about to pick a jury.  "A midtrial continuance may be granted only for good cause." (*People v. Winbush* (2017) 2 Cal.5th 402, 469 (*Winbush*); see also Pen. Code, § 1050, subd. (e).)  In order to show good cause, defendant was

required to demonstrate to the trial court that he " 'prepared for trial with due diligence.' " (*Winbush,* at pp. 469–470.) In exercising its discretion, the trial court was required to consider numerous factors including the benefit defendant anticipated by receiving the continuance as well as the likelihood that benefit would result, the burden on witnesses, jurors and the court, " ' " 'and, above all, whether substantial justice [would] be accomplished or defeated by a granting of the motion.' " ' " (*Doolin*, *supra*, 45 Cal.4th at p. 450.)

Here, defendant had long been on notice that samples had been collected from the victim during her SART examination in July and that those samples were being tested for DNA. Defendant was also well aware of the prosecution's intent to use the DNA evidence at trial. Defendant offers no explanation for why an expert had not been contacted and asked to be on call to review the report once the DNA testing was completed.

Moreover, defendant has not demonstrated what benefit defendant anticipated by obtaining a brief continuance and presenting a DNA expert of his own. He only says in conclusory fashion that a "fuller picture" of what the DNA evidence showed could have been presented to the jury. But, defendant's theory of the case was that the physical contact was consensual, *not* that it did not occur or that someone else was responsible. Indeed, when defendant testified, he *admitted* kissing D.S. and putting his mouth on D.S.'s breasts and bare buttocks, making the brief testimony of the criminalist confirming the presence of his DNA on D.S.'s breast and buttocks fairly insignificant in comparison. Further, the DNA evidence showed there was no DNA found in any of the vaginal swabs which defendant was able to argue, apparently successfully, that no rape or sexual penetration had occurred. Nothing in the record supports a conclusion the trial court acted arbitrarily or

denied defendant due process by denying his midtrial request for a continuance.

## 2. Exclusion of Evidence

### a. Background

In a pretrial motion, defendant proffered evidence of several prior incidents involving D.S. that counsel argued showed she had a history of engaging in violent acts. Defendant argued they were relevant to her credibility and admissible as impeachment. In the trial court, defendant sought to introduce multiple prior acts but argues here only that the court erred in excluding two of the incidents: one from January 2018 and the other from October 2021.

The incident in January 2018 involved an altercation between defendant and D.S. after which both were arrested for domestic violence but neither one was charged. Defense counsel argued that D.S. had admitted at the preliminary hearing that she charged at defendant with a knife during that altercation. Defense counsel said that conduct showed moral turpitude and should be admitted. The second incident in October 2021 involved defendant and D.S. and other unidentified individuals. As with the January 2018 incident, D.S. was not charged or convicted of any crime. Defense counsel relied on a brief video clip showing a portion of the incident and said it was another example of D.S.'s propensity for violence. The video clip showed D.S. physically confronting defendant and then turning towards a car and hitting the windshield with her hands. The court excluded both incidents as irrelevant.

### b. Analysis

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) The trial court's latitude under section 352 to exclude

8

impeachment evidence is broad. (*Clark,* at p. 931.) Evidence may be properly excluded " 'if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' An exercise of discretion under Evidence Code section 352 will be affirmed unless it was arbitrary, capricious, or patently absurd and the ruling resulted in a miscarriage of justice." (*Winbush, supra,* 2 Cal.5th at p. 469.)

The two incidents at issue here did not involve prior convictions. They involved two prior altercations between D.S. and defendant that did not result in any charges or convictions. *Clark* explains that where, as here, the proffered impeachment evidence is misconduct other than a prior conviction, additional factors must be considered in assessing admissibility. "This is because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude. [Citation.] As we have advised, 'courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' " (*Clark, supra,* 52 Cal.4th at pp. 931–932.)

We find no abuse of discretion in the trial court's decision to exclude these two incidents. There was insufficient evidence presented supporting the conclusion they reflected on D.S.'s character or propensity for dishonesty and would undoubtedly have entailed an undue consumption of time and confusion of the issues. They were properly excluded under Evidence Code section 352.

### 3. Count 6 (Assault with Intent to Commit Rape, Sexual Penetration, Sodomy or Oral Copulation)

Defendant contends his conviction on count 6 for assault with intent to commit rape must be vacated because the jury acquitted him of assault to commit rape as a lesser included offense to count 1 and found him guilty of assault with intent to commit sexual penetration as a lesser included charge on count 2. In his opening brief, defendant cites to Penal Code section 1023 and argues he cannot be twice placed in jeopardy and convicted of the same offense for which he was acquitted. In his reply brief, defendant concedes that section 1023 is not applicable to a single criminal prosecution. However, he argues that count 6 must still be vacated because a defendant may not be convicted of two offenses arising from a single act when one is a lesser offense of the other. We reject defendant's argument.

"In California, a single act or course of conduct by a defendant can lead to convictions 'of *any number* of the offenses charged.' [Citations.] But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) "The proscription against multiple convictions for both a greater and lesser included offense applies only where both offenses are based upon a single act." (*People v. Cortez* (1981) 115 Cal.App.3d 395, 410.)

The jury's verdicts here did not violate the rule prohibiting multiple convictions on necessarily included offenses arising from a single act. The testimony of D.S. supported a finding that defendant committed numerous separate sexual offenses against her. She attested to a course of assaultive conduct by defendant from the time he entered her apartment, maneuvered her to the couch and then forced her up against the counter in the kitchen. Defendant's own testimony corroborated that he performed multiple

acts, claiming the various acts were consensual.  In closing argument, the prosecutor argued that multiple criminal acts occurred.  She explained to the jury that count 1 (forcible rape) was based on defendant's attempt to rape D.S. with his penis and count 2 (forcible sexual penetration) was based on defendant's attempt to put his fingers in her vagina.  The prosecutor said count 6 (assault with intent to commit rape, sexual penetration, sodomy or oral copulation) "is for all the touching that took place before the actual rape and sexual penetration."  Defendant has not shown any basis for disregarding the jury's findings and vacating his conviction on count 6.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, Acting P. J.


WE CONCUR:




WILEY, J.




VIRAMONTES, J.

11